## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| SPIN MASTER LTD., | |
| Plaintiff, | |
| vs. | Case No.  19-cv-2193 |
| ODYSSEY MARKETING CORP. d/b/a ODYSSEY TOYS, | |
| Defendant. | |

## COMPLAINT

Plaintiff Spin Master Ltd. ("Spin Master"), for its Complaint against Defendant Odyssey Marketing Corp. ("Odyssey"), alleges that Odyssey engaged in copyright and trade dress infringement, and federal unfair competition. Spin Master seeks damages, an accounting, and injunctive relief.

## THE PARTIES

1.      Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business located at 121 Bloor Street East, Toronto, Ontario, Canada M4W 1A9.

2.      Upon information and belief, Odyssey is a Florida corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 20205 N.E. 23rd Court, Miami, Florida 33180.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the claims in this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act); the Copyright Act, 17 U.S.C. § 101, *et.*

*seq.;* and 28 U.S.C. §§1331 (federal question). Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and § 1400(a), because Odyssey engages in a substantial part of its ordinary business in a continuous way within this district and Odyssey has committed infringing acts of making, distributing, advertising, using, selling, and/or offering to sell the infringing products in this judicial district.

5.      This Court has personal jurisdiction over Odyssey because, among other things, Odyssey is doing business in the State of Kansas. And Odyssey purposefully directs and conducts business in Kansas through its "Where to Buy" function on its website (see Exhibit C), which directs residents of this district to various locations within this jurisdiction, where Odyssey's products, including the products complained of in this action, may be purchased.  Further, Odyssey purposefully directs and conducts business through the stream of commerce by selling the products complained of in this action through these distributors in Kansas, and the acts of copyright and trade dress infringement complained of in this action took place in the State of Kansas. Additionally, Odyssey sells the products complained of in this action into this district through distributors. See Exhibits D and E.

## FACTUAL BACKGROUND

### A.      Spin Master and the Rotating Toy

6.      Spin Master was founded in 1994. Since that time, Spin Master has launched many notable toy products, including the Air Hogs flying products, launched in 1998. Between 2002-2007, Spin Master expanded its brand globally, allowing for the expansion of its licensing capabilities and relationship with entertainment companies.

7.     Spin Master applied for copyright protection, obtaining copyright registration on its Vectron Ultralite product.

8.     After Spin Master's success in the gaming and toy space, other companies have released their own versions of Spin Master products in an effort to leverage Spin Master's success. Odyssey is one such company, releasing the "Shooting Star" toy, which is clearly based on the Spin Master copyright registrations.

**B.     Spin Master Brand and its Zoomer Dog Brand**

9.     In 2013, Spin Master released the Zoomer Dog, a robotic puppy, which was nominated as an Amazon Top Toy in 2014 and has won three Toy of the Year awards. Since its release, Zoomer Dog has led to the development and release of a line of Zoomer products, such as Zuppies, Zoomer Dino, and Zoomer Kitty.

10.     Spin Master applied for copyright protection, obtaining copyright registration on its Zoomer product.

11.     After the success of the Zoomer brand, other companies have released their own versions of the robotic puppy in an effort to leverage Spin Master's success. Odyssey is one such company, releasing the "Gizmo" robotic puppy in 2018.

**C.     Spin Master's Intellectual Property Rights**

12.     Spin Master has protected its innovative designs by investing in and acquiring a broad range of intellectual property rights. Among those rights are copyright registrations and trade dress.

**Spin Master's Copyright Registration**

13.     Spin Master registered a copyright relating to its Vectron Ultralite design.  Relevant to this dispute, Spin Master owns all right, title, and interest in, and has the right to sue and recover

for past, present, and future infringement of, the Spin Master Copyright registered as VA 1-285-847, from the effective date of registration with the United States Copyright Office, May 9, 2004. A copy of the Copyright Registration is attached as Exhibit A and is incorporated by reference.

14.   An exemplary image from Copyright Reg. No. VA 1-285-847 is shown below:



15.   Spin Master also registered a copyright relating to its Zoomer product design. Relevant to this dispute, Spin Master owns all right, title, and interest in, and has the right to sue and recover for past, present, and future infringement of, the Spin Master Copyright, registered as VA 1-995-183, from the effective date of registration with the United States Copyright Office, November 5, 2015. A copy of the Copyright Registration Certificate is attached to this Complaint as Exhibit B and is incorporated by reference.

16.   Exemplary images from Copyright Reg. No. VA 1-995-183 are shown below:



17.   The Spin Master copyright registrations are presumed to be valid.

4

18.     Spin Master has given actual notice of its Zoomer copyright to Odyssey by correspondence dated July 26, 2018.

## Spin Master's Trade Dress

19.     Spin Master also has protectable trade dress rights in its Zoomer Dog.

20.     By way of example, the Zoomer Dog has consistently featured the following unique combination of design characteristics (which together in any combination form the "Zoomer Dog trade dress"):

> a.   A particular body design featuring two parts that feature a specific shape and which taper towards the connection point in the middle of the robotic dog's body, with the front portion including a transition to a triangular shape from the top and bottom views;
>
> b.   An easily-recognizable head shape that includes a line of delineation between the upper and lower portions of the head, forming a mouth-like contour;
>
> c.   A tail that is also distinctively shaped, with a mostly uniform diameter along the length of the tail and ending in a mostly spherical tip; and
>
> d.   A black and white color palette, with the exception of colored LED eyes.

21.     The Zoomer Dog trade dress is non-functional, with the particular design choices providing no utilitarian advantage.

22.     The trade dress is non-functional; the innovative design of Zoomer Dog does not require that the tail, body, head, and mouth have the distinctive shapes and contours that they do in order to operate.

23.     Further, the Zoomer Dog trade dress has acquired secondary meaning, where the relevant public recognizes and understands that the respective trade dress distinguishes and identifies the robotic dogs manufactured by Spin Master.

24.     As a result of Spin Master's promotion and sale of products under the Zoomer Dog trade dress, it has gained significant recognition and goodwill among the relevant purchasing public and has attained fame as indicated by its awards, press coverage, and sales volume.

25.     Products bearing the Zoomer brand have acquired strong consumer recognition, as they are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products originating from Spin Master. Spin Master has received numerous awards to substantiate as much, including but not limited to several "Toy of the Year" awards, including "Innovative Toy of the Year" in 2014 from the Toy Industry Association and a "Parents' Choice Award" in 2013 from the Parents' Choice organization.

### D.  Odyssey's Infringing Activities

#### Infringement of Spin Master's Vectron Ultralight Copyright

26.     Without Spin Master's authorization, Odyssey made, used, offered for sale, sold, and/or imported into the United States the Shooting Star product that is substantially similar to Spin Master's Vectron Ultralite copyright.

27.     The overall appearance of the Spin Master Vectron Ultralite copyright and Odyssey's Shooting Star are substantially the same.

28.     Table 1 below illustrates Odyssey's infringement by comparing figures from the Spin Master Vectron Ultralite copyright with exemplary images of the Shooting Star product.

| Table 1: Comparison of Spin Master Copyright "Vectron Ultralite" with Exemplary Infringing Product "Shooting Star" |
|---|

| Spin Master Vectron Ultralite Copyright Deposit Figures | Exemplary "Shooting Star" Figures |
|---|---|



29. On information and belief, Odyssey intended to copy the designs covered by the Spin Master Vectron Ultralite copyright.

30. Odyssey sells and offers to sell its products, including the Shooting Star, to end-user customers through retail stores, and offers a "Where to Buy" functionality on its website to direct end-user customers to locations where they can purchase Odyssey's products.

31. On information and belief, Odyssey sells and offers to sell the Shooting Star to end-user customers in the United States, including Kansas.

32.     Odyssey has infringed and continues to infringe the Spin Master Vectron Ultralite copyright within the meaning of 17 U.S.C. § 501 at least by making, using, selling, offering to sell, and/or importing the Shooting Star into the United States without Spin Master's authorization.

**Infringement of Spin Master's Zoomer Copyright**

33.     Without Spin Master's authorization, Odyssey made, used, offered for sale, sold, and/or imported into the United States robotic toy dogs known as "Gizmo: The Smart Puppy" that is substantially similar to Spin Master's Zoomer copyright.

34.     The overall appearance of the Spin Master Zoomer copyright and Odyssey's Gizmo are substantially the same.

35.     Table 2 below illustrates Odyssey's infringement by comparing figures from the Spin Master copyright with exemplary images of Gizmo.

| Table 2: Comparison of Spin Master Copyright "Zoomer Dog" with Exemplary Infringing Product "Gizmo" | |
| --- | --- |
| **Spin Master Zoomer Copyright Deposit Figures** | **Exemplary "Gizmo" Figures** |
|  |  |



36.     On information and belief, Odyssey intended to copy the designs covered by the Spin Master Zoomer copyright.

37.     Odyssey sells and offers to sell its products, including Gizmo, to end-user customers through retail stores, and offers a "Where to Buy" functionality on its website to direct end-user customers to locations where they can purchase Odyssey's products.

38.     On information and belief, Odyssey sells and offers to sell Gizmo to end-user customers in the United States, including Kansas.

39.     Odyssey has infringed and continues to infringe the Spin Master Zoomer copyright within the meaning of 17 U.S.C. § 501 at least by making, using, selling, offering to sell, and/or importing the Gizmo into the United States without Spin Master's authorization.

**Infringement of Spin Master's Trade Dress**

40.     Without Spin Master's authorization, Odyssey sells, offers for sale, distributes and advertises within the United States robotic toys that infringe the Spin Master Trade Dress. The product is identified by and marketed as "Gizmo: The Smart Puppy;" any other products bearing the same or substantially similar infringing designs, regardless of model name, are also considered to be violations of the Spin Master Trade Dress.

41.     Table 3 below illustrates Odyssey's infringement by comparing the Spin Master Trade Dress with exemplary images of infringing Odyssey products and marketing materials.

| Table 3: Comparison of Spin Master "Zoomer Dog" Trade Dress with Exemplary Infringing Product "Gizmo" and Related Materials | |
| --- | --- |
| Spin Master's Zoomer body shape | Odyssey's Gizmo body shape |
|  |  |
|  |  |
| Zoomer formation of "mouth" and head shape | Gizmo formation of "mouth" and head shape |

| Table 3: Comparison of Spin Master "Zoomer Dog" Trade Dress with Exemplary Infringing Product "Gizmo" and Related Materials | |
|---|---|
|  |  |
| Zoomer tail shape | Gizmo tail shape |
|  |  |
| Zoomer black and white color palatte | Gizmo black and white color palatte |
|  |  |

42.     In addition to the product above, on its website and marketing material, Odyssey used Spin Master's intellectual property, including the copyright and trade dress.

11

43.     By way of non-limiting example, Odyssey advertises and sells its products by prominently displaying Spin Master's valuable Zoomer copyright and trade dress on its website for the Gizmo toy at the following link: http://odysseytoys.com/toys/gizmo/.

44.     Non-limiting examples from Odyssey's website showing the prominent use and placement of Spin Master's intellectual property are shown below:



   

Source: http://odysseytoys.com/toys/gizmo/

45.     Other examples of Odyssey's inappropriate use of the Spin Master Zoomer copyright and trade dress may be found at its website on the main page at the following link: http://odysseytoys.com/.

46.     Odyssey also uses Spin Master's valuable intellectual property in the videos promoting the Gizmo toy to end-user customers, which can be viewed on its website or on Odyssey's   channel   on   the   YouTube   website,   available   at   the   following   link:

https://www.youtube.com/user/ODYSSEYTOYS. Non-limiting examples of Odyssey's use of Spin Master's intellectual property are shown below:



Source: https://www.youtube.com/watch?v=nEHdeGq5nHY

47.     A consumer searching the products sold by Spin Master and the products sold by Odyssey would be confused as to the origin, source, or sponsorship of the robotic dogs due to Odyssey's identification of its own products that use Spin Master's trade dress. For example, a Google search for "Gizmo smart puppy" results in multiple images of Spin Master's Zoomer dog, as shown below:



48.     Through these and other means, Odyssey has advertised, sold, offered for sale and distributed within the United States products that infringe various intellectual property rights belonging to Spin Master.

49.     At all times, Spin Master offered for sale products featuring the Zoomer Dog trade dress and copyright before Odyssey's infringing designs were offered for sale.

50.     Upon information and belief, Odyssey's use of Spin Master's proprietary copyright and trade dress was designed and intended to cause actual confusion concerning the true origin, source, or sponsorship of its products.

51.     By virtue of the acts complained of herein, Odyssey has created a likelihood of injury to Spin Master and its business reputation, caused a strong likelihood of consumer confusion, mistake, and deception as to the source of or relationship between Spin Master's and Odyssey's goods, has caused actual confusion, has otherwise competed unfairly with Spin Master by unlawfully trading on and using the Zoomer Dog trade dress and copyright without Spin Master's permission or consent.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement, 17 U.S.C. § 501)

52.     Spin Master incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

53.     Spin Master is the sole owner of all right, title, and interest in the Vectron Ultralite and Zoomer copyrights.

54.     Odyssey is not authorized to reproduce, advertise, distribute, sell, exhibit or otherwise use the Vectron Ultralite or Zoomer copyrights.

55.     Odyssey has copied and prepared derivative works based on the Vectron Ultralite and Zoomer copyrights, and have used the Vectron Ultralite and Zoomer copyrights in the sale of the Shooting Star and Gizmo products.

56.     Odyssey has sold and offered for sale its infringing Shooting Star and Gizmo products.

57.     Odyssey's conduct has infringed Spin Master's Vectron Ultralite and Zoomer copyrights.

58.     Odyssey has actual knowledge of Spin Master's Zoomer copyright since at least as early as July 26, 2018, and its actions constitute willful and intentional infringement of Spin Master's Zoomer copyright. Odyssey infringed Spin Master's Zoomer copyright with reckless

disregard for Spin Master's rights. Odyssey knew, or it was so obvious that Odyssey should have known, that its actions constituted infringement of Spin Master's Zoomer copyright.

59.     As a direct and proximate result of Odyssey's copyright infringement, Odyssey has derived and received gains, profits, and advantages in an amount that has not been confirmed.

60.     Spin Master has displayed its copyright along with the letter C enclosed in a circle, giving public notice that its copyright is registered with the U.S. Copyright Office.

61.     Pursuant to 17 U.S.C. § 504, Spin Master is entitled to damages for Odyssey's infringing acts or may, at any time prior to final judgment, elect to receive statutory damages for all infringements in this action.

62.     Pursuant to 17 U.S.C. § 504(b), Spin Master is entitled to actual damages suffered as a result of Odyssey's infringement of Spin Master's property rights.

63.     Pursuant to 17 U.S.C. § 504(b), Spin Master is entitled to any profits of Odyssey's that are attributable to the sale of products that infringe Spin Master's property rights and that are separate from the calculation of actual damages.

64.     Pursuant to 17 U.S.C. § 505, Spin Master is entitled to reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Federal Trade Dress Infringement, 15 U.S.C. § 1125(a))

65.     Spin Master incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

66.     As identified above, Spin Master's Zoomer Dog has a distinctive appearance that is non-functional, and the appearance of Odyssey's Gizmo dog creates a likelihood of confusion among consumes as to the source of the products. The Zoomer Dog brand's trade dress is property of Spin Master, and Odyssey's continued use of Spin Master's trade dress constitutes infringement.

67.     Odyssey's use of Spin Master's trade dress in interstate commerce is likely to cause customer confusion.

68.     Odyssey directly competes with Spin Master in the sales of children's toys, including specifically robotic toy dogs.

69.     Odyssey's sales, offers for sale, advertisement, and distribution of the products identified above that infringe Spin Master's trade dress are likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection, or association of Odyssey with Spin Master, or as to the origin, sponsorship, or approval by Spin Master of Odyssey's goods, services, or commercial activities. Such confusion or mistake is likely to occur either at the point of sale of these products, at some point commercially downstream thereafter, or in both instances.

70.     Odyssey's website, advertising and marketing material, and product copy and/or infringe Spin Master's trade dress as identified above.

71.     Odyssey's website, sales, offers for sale, advertisement, and distribution of these products enables Odyssey to benefit unfairly from Spin Master's reputation and success, thereby giving Odyssey's infringing products the sales and commercial value they otherwise would not have.

72.     Odyssey's unauthorized use of Spin Master's trade dress is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship, or approval of Odyssey's line of products and/or to cause confusion or mistake as to any affiliation, connection, or association between Spin Master and Odyssey, in violation of 15 U.S.C. § 1125(a).

73.     Spin Master is informed and believes, and on that basis alleges, that Odyssey has gained profits by virtue of their infringement of Spin Master's trade dress.

74.     Spin Master will suffer and is suffering irreparable harm from Odyssey's infringement of Spin Master's trade dress insofar as Spin Master's invaluable goodwill is being eroded by Odyssey's continuing infringement. Spin Master has no adequate remedy at law to compensate it for the consumer confusion and loss of business reputation, customers, market position, and goodwill flowing from Odyssey's infringing activities. Pursuant to 15 U.S.C. § 1116, Spin Master is entitled to an injunction against Odyssey's continuing infringement of Spin Master's trade dress. Unless enjoined, Odyssey will continue its infringing conduct.

75.     Odyssey had actual notice of Spin Master's trade dress since at least July 26, 2018.

76.     Because Odyssey's actions have been committed with intent to damage Spin Master and to confuse and deceive the public, Spin Master is entitled to Odyssey's profits, Spin Master's damages, costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### THIRD CLAIM FOR RELIEF
**(Federal Unfair Competition, 15 U.S.C. § 1125(a))**

77.     Spin Master incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

78.     The foregoing acts of Odyssey constitute unfair competition in violation of 15 U.S.C. § 1125.

79.     Odyssey's infringing acts as alleged above have caused and are likely to cause confusion, mistake, and deception as to the source or origin of Odyssey's products, and in particular, have deceived and are likely to deceive buyers and potential buyers that Odyssey's products originate from, are associated or affiliated with, or are otherwise authorized by Spin Master.

80.     Upon information and belief, Odyssey has made and will continue to make profits and/or gains to which he is not in law or equity entitled.

81.     Upon information and belief, Odyssey intends to continue its infringing acts, unless restrained by this Court.

82.     Odyssey's acts have damaged and will continue to damage Spin Master, and Spin Master has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Spin Master prays for judgment against Odyssey as follows:

83.     For an order and judgment that Odyssey has willfully infringed the Spin Master copyright under 17 U.S.C. § 501;

84.     For an order and judgment that Odyssey has infringed Spin Master's trade dress in violation of Spin Master's rights under 15 U.S.C. § 1125(a);

85.     For an order and judgment that Odyssey has unfairly competed with Spin Master in violation of Spin Master's rights under 15 U.S.C. § 1125(a);

86.     For a permanent injunction enjoining and restraining Odyssey, and its agents, affiliates, employees, and all persons in active concert or participation with it, from:

      a.     Advertising, offering for sale, selling, or distributing any products which bear Spin Master's copyright and/or trade dress, or bear any other mark or any other designation that so resembles Spin Master's designs as to be likely to cause confusion, mistake or deception; and

      b.     Using any word, term, symbol, or any combination thereof, or any false or misleading description of fact, which in commercial advertising or promotion

misrepresents the nature, characteristics, qualities, sponsorship, or affiliation of Odyssey's goods or services with Spin Master's goods or services.

87.     Requiring Odyssey to destroy or otherwise dispose of all remaining inventory of all infringing products, including all advertisements, promotional and marketing materials therefore, as well as means of making same and any tooling, molds, or other materials used in the means of making same;

88.     For an order requiring Odyssey to file with this Court and serve upon Spin Master within fifteen (15) days after issuance of any injunction, a report in writing under oath setting forth in detail the manner and form in which Odyssey has complied with the injunction;

89.     For an order requiring Odyssey to account to Spin Master for any and all profits derived by Odyssey from the use of any designation or copyright confusingly similar to Spin Master's trade dress or copyright, and for all damages sustained by Spin Master by reason of Odyssey's acts of copyright infringement, trade dress infringement, unfair competition, and injury to business reputation complained of in this Complaint, and that such amounts be held in constructive trust for Spin Master;

90.     A determination and judgment that this is an exceptional case under 25 U.S.C. § 1117.

91.     That the Court award Spin Master:

a.     All profits derived by Odyssey's wrongful acts complained of herein;

b.     All damages, including statutory damages, sustained by reason of the wrongful acts complained of herein;

c.     All damages caused by Odyssey's infringement of the Spin Master copyright (but in no event less than a reasonable royalty) pursuant to 17 U.S.C. § 504, or

the total profit made by Odyssey from its infringement of the Spin Master copyright pursuant to 17 U.S.C. § 504;

        d.      Enhanced damages for violation of Spin Master's rights under 17 U.S.C. § 504;

        e.      Damages for Odyssey's violation of 15 U.S.C. § 1125(a);

        f.      Supplemental damages or profits for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

        g.      Its costs incurred in this action;

        h.      Its reasonable attorneys' fees pursuant to 17 U.S.C. § 504, and 15 U.S.C. § 1117(a); and pre-judgment and post-judgment interest.

92.      Such other and further and additional relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

93.      Plaintiff Spin Master Ltd. hereby requests a jury trial on all issues so triable.


Dated: April 18th, 2019

                          Respectfully submitted,

                          /s/ *Megan J. Redmond*
                          Megan J. Redmond
                          Carrie Bader
                          Erise IP, P.A.
                          7015 College Blvd.
                          Suite 700
                          Overland Park, KS 66211
                          913-777-5600
                          Megan.redmond@eriseip.com
                          Carrie.bader@eriseip.com

                          *Counsel for Plaintiff Spin Master Ltd.*